# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **FIRST AMERICAN TITLE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 7:14-cv-00374** |
| | ) | |
| **v.** | ) | |
| | ) | **By:   Michael F. Urbanski** |
| **STAR CITY TITLE & SETTLEMENT** | ) | **United States District Judge** |
| **AGENCY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the motions of defendants NGM Insurance and Star City Title & Settlement Agency, Inc. ("Star City") to dismiss this action as barred by the statute of limitations (Dkt. # 7 & 14).  For the reasons set forth below, the motions will be **GRANTED**.

## I.

The facts of this case arise out of a 2005 real estate transaction involving David and Debra Cook.  The Cooks, owners of real property located in Roanoke County, Virginia, were indebted to Macquarie Mortgages USA under a credit line dated November 12, 2004.  This credit line was secured by a duly recorded credit line deed of trust that encumbered the property (the "Macquarie Credit Line Deed of Trust").

In 2005, the Cooks refinanced through First National Bank ("FNB") and obtained a loan in the amount of $214,400.00, which was to be secured by a new, and paramount, deed of trust against the property.  The closing took place on October 7, 2005, with defendant Star City acting as settlement agent.  Settlement agents have certain obligations under Virginia law.  <u>See</u> Virginia Consumer Real Estate Settlement Practice Act (CRESPA), Va. Code Ann. § 55-525.18 (formerly § 6.1-2.19) <u>et</u> <u>seq.</u>  One such obligation is to "exercise reasonable care and comply with all applicable

requirements of [Virginia law] and its licensing authority . . . ."  Id. § 55-525.20(A).  Another is to

maintain a surety bond.  Id. § 55-525.20(B)(3).  Accordingly, Star City was the named Principal on a

$100,000 surety bond, on which defendant NGM Insurance served as surety (the "CRESPA

Bond").[1]

In addition to serving as settlement agent, Star City was an authorized agent of plaintiff First

American Title Insurance Company ("First American").  In that capacity, Star City issued to FNB

and its successors and assigns a title insurance policy, which insured against the priority of any lien

or encumbrance over the lien of FNB (the "FNB Deed of Trust").

In its role as settlement agent at closing, Star City wired to Macquarie the pay-off amount of

the Macquarie credit line and, on October 14, 2005, recorded the FNB Deed of Trust.  Star City

maintains that it also sent Macquarie a written request by the Cooks to close the Macquarie credit

line; Macquarie, however, claims never to have received it.  Thus, Macquarie never closed the credit

line it had extended to the Cooks and never released the Macquarie Credit Line Deed of Trust,[2]

which remained the first lien on the Cooks' property, paramount to the FNB Deed of Trust.  Over

the next several years, the Cooks continued to make draws on the still-open Macquarie credit line.

On April 4, 2011, all beneficial interests in the FNB Deed of Trust were assigned to Wells

Fargo Bank, N.A.  Several months prior, on December 17, 2010, Wells Fargo had made a claim

under the First American title insurance policy, noting the continued presence of the Macquarie

---

[1]  The CRESPA bond was issued in 2001 in the amount of $100,000.  In 2008, the statute was amended to require a bond in the amount of $200,000, and a surety rider increasing the bond amount to $200,000 was executed on April 30, 2008.

[2] Macquarie apparently relied on Virginia Code § 55-66.3(A)(1), which provides that "after full or partial payment or satisfaction has been made of a debt secured by a deed of trust . . . the lien creditor shall issue a certificate of satisfaction . . . in form sufficient for recordation reflecting such payment and release of lien.  This requirement shall apply to a credit line deed of trust prepared pursuant to § 55-58.2 only when the obligor or the settlement agent has paid the debt in full *and requested that the instrument be released.*"  (emphasis added).

Credit Line Deed of Trust as an apparent first and paramount lien on the property. See Dkt. # 32, at 2-3.

The Cooks ultimately accumulated $276,000 in debt on the Macquarie credit line, defaulted on that debt, and lost the property in a foreclosure sale under the Macquarie Credit Line Deed of Trust on January 29, 2013. The property sold for $180,200, an amount less than what was owed under the Macquarie credit line, thereby eliminating the subordinate FNB Deed of Trust.

On April 9, 2014, First American paid the face amount of its title insurance policy, $214,400, to Wells Fargo, successor in interest to the FNB Deed of Trust. First American now brings this action for breach of contract as subrogee to the rights and claim of Wells Fargo, an aggrieved person under the CRESPA Bond,[3] seeking $100,000 from Star City and NGM Insurance, jointly and severally, as the penalty amount of the CRESPA Bond in force on the date of the transaction at issue. Both defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing First American cannot maintain a cause of action against the CRESPA Bond as Wells Fargo's subrogee because any claim Wells Fargo may have had against the bond is barred by the statute of limitations.

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

---

[3] First American alleges in its complaint that it has standing to bring this claim as subrogee of Wells Fargo and in its own right. Defendants argue that First American does not have standing to assert a claim against the bond in its own right, and First American concedes this point on brief. See Pl.'s Br., Dkt. # 11, at 3 (citing First Am. Title Ins. Co. v. Western Surety Co., 283 Va. 389, 400, 722 S.E.2d 637, 642 (2012)). Thus, this is strictly a subrogation case.

A court should construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [the complaint's] legal conclusions." Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085–86 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.

As Wells Fargo's subrogee, First American "stands in the place of one whose claim he has paid." United States v. California, 507 U.S. 746, 756 (1993) (quoting United States v. Munsey Trust Co., 332 U.S. 234, 242 (1947)). Thus, First American "cannot acquire by subrogation what another whose rights he claims did not have." Id. First American concedes that, as subrogee of the rights and liabilities of its insured, it is subject to any defense that might have been asserted against Wells Fargo, including a statute of limitations defense.

## III.

In this case, First American seeks payment on the CRESPA Bond. The parties agree that the CRESPA Bond is construed as a contract,[4] see Foster v. Wilson, 139 Va. 82, 89 (1924), and that the applicable limitations period for breach of a written contract is five years, Va. Code Ann. § 8.01-246. The parties further agree that the limitations period begins to run from the date "when the breach of contract occurs in actions ex contractu," as set forth in Virginia Code § 8.01-230. See also

---

[4] "Every surety bond involves a three-party relationship: (1) The "Principal," or obligor, who is the party obligated under the original contract (in this case Star City Title); (2) the "Obligee," or beneficiary, who is the person for whose benefit the bond is given (in this case [Wells Fargo]); and (3) the "Surety," who is the party that guarantees the principal's obligations in exchange for a premium and the principal's promise to indemnify the surety for any loss (in this case [NGM Insurance Company]). See 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 11:14 at 26 (3d. ed.1995); Restatement (Third) of Suretyship and Guaranty § 1 (1995)." First Am. Title Ins. Co. v. W. Sur. Co., No. CIV.A.1:09-CV-403, 2009 WL 1491418, at *3 n.2 (E.D. Va. May 27, 2009).

4

United States v. Cocoa Berkau, Inc., 990 F.2d 610, 613 (Fed. Cir. 1993) ("The law is well settled that, as a general rule, a claim does not accrue until all events necessary to fix the liability of a defendant have occurred. . . . With respect to a claim arising from a bond, it is equally well settled that the date of accrual occurs at the time of the breach of the bond." (internal citations omitted)). Where the parties disagree, and, thus, the issue to be determined by the court, is *when* the breach of bond occurred in this case. The parties ask the court to "look to the language of the bond" in answering this question. Cocoa Berkau, 990 F.2d at 613. However, each points to different language in the CRESPA Bond as operative.

Defendants maintain that the breach occurred on October 14, 2005 when Star City recorded the FNB Deed of Trust in a second position after the Macquarie Credit Line Deed of Trust. Defendants argue the complaint alleges no wrongdoing after that date, and a precondition to maintaining an action against the Bond is a violation of Virginia law or administrative authority:

> NOW THEREFORE, the condition of this obligation is such that if the Principal shall be registered with the Virginia State Bar to act as a settlement agent and if the Principal shall act in such capacity in full compliance with the provisions of the laws of the Commonwealth of Virginia and rules, regulations, and orders prescribed by the Virginia State Bar and the State Corporation Commission pertaining to Settlement Agents, then this obligation shall be null and void; otherwise to remain in full force and effect.

Compl., Dkt. # 1, at Ex. A; NGM's Rebuttal Br., Dkt. # 19, at 1-2. Defendants argue:

> If [First American] is correct that Star City failed to procure the release of the Macquarie Credit Line Deed of Trust, its error was in violation of its requirement [as a settlement agent] to "exercise reasonable care" under CRESPA. Va. Code § 55-525.20(A). In turn, by violating CRESPA, Star City also would have breached the condition of the Bond requiring "full compliance with the provisions of the laws of the Commonwealth of Virginia . . . pertaining to Settlement Agents."

NGM's Mot. to Dismiss Br., Dkt. # 8, at 11.

For its part, First American insists there is another precondition of maintaining an action on the Bond that defendants ignore—that there be an "aggrieved person" who is "injured by the Principal." First Am.'s Resp. Br., Dkt. # 11, at 5; see Compl., Dkt. # 1, at Ex. A. First American contends that Wells Fargo only became an "aggrieved person" on January 29, 2013, the date of the foreclosure sale. "[T]he unambiguous terms of the CRESPA Bond mean that unless and until there is an 'aggrieved person' who suffers an 'injury' there can be no right of action under the bond." Id.

First American's focus on the words "aggrieved person" in the CRESPA Bond is misplaced. Wells Fargo, as successor in interest to FNB, became an "aggrieved person" under the Bond when it was injured by the Principal—that is, when settlement agent Star City breached its duty to exercise reasonable care as required by Virginia Code § 55-525.20(A) and failed to close the Macquarie credit line and secure release of the Macquarie Credit Line Deed of Trust. That the extent of Wells Fargo's injury—in other words, the monetary damages Wells Fargo suffered as a result of the injury— did not become fixed until the January 2013 foreclosure sale is irrelevant. Under Virginia law, a right of action for breach of contract accrues and the statute of limitations begins to run from the date when the breach occurs "and not when the resulting damage is discovered." Va. Code Ann. § 8.01-230. The Supreme Court of Virginia has spoken plainly about this issue:

> In Virginia, [w]e have followed the general rule that the applicable period of limitation begins to run from the moment the cause of action arises rather than from the time of discovery of injury or damage, and we have said that difficulty in ascertaining the existence of a cause of action is irrelevant.

Shipman v. Kruck, 267 Va. 495, 503, 593 S.E.2d 319, 323 (2004) (quoting Va. Military Institute v. King, 217 Va. 751, 759, 232 S.E.2d 895, 900 (1977)). Indeed, the Virginia Supreme Court recognized in Virginia Military Institute v. King that "this rule may produce inequities by triggering a statute of limitations 'when the injury or damage is unknown'" but concluded that "it was the role of

Case 7:14-cv-00374-MFU-RSB   Document 42   Filed 05/05/15   Page 6 of 10   Pageid#: 241

the General Assembly, not the judiciary, to change a rule of law that has been relied upon by bench and bar for so long." Id. (citation omitted).

The case of Rossman v. Lazarus out of the Eastern District of Virginia is instructive. There, plaintiff argued defendant American Home Mortgage Company breached its mortgage agreement with plaintiff after the first mortgage on plaintiff's property was paid off upon refinancing in 2001 but the lien not released until 2003. Considering American Home's motion to dismiss, the court held that the claim accrued as of the date the breach occurred in 2001, not in 2003, and thus the claim was barred by the five year statute of limitations. Mem. Opinion, No. 1:08cv316-JCC-JFA (E.D. Va. Jan. 9, 2009), ECF No. 192, at 12.

Similarly, First Virginia Bank-Colonial v. Baker, 225 Va. 72, 301 S.E.2d 8 (1983), which Star City brought to the court's attention at the hearing on the motions to dismiss,[5] supports defendants' position in this case. In Baker, plaintiff First Virginia Bank-Colonial agreed to loan Ramez M. Zahralddin and his wife $133,000 to be secured by what it intended to be a second deed of trust on the Zahralddins' property, as a title examination had revealed a first deed of trust recorded February 13, 1973 securing payment of $33,250 to Heritage Savings and Loan. Plaintiff closed on the loan and recorded its deed of trust in second position behind Heritage's deed of trust on May 12, 1976. Id. at 75, 301 S.E.2d at 10.

Two years later, in August 1978, plaintiff discovered that its deed of trust was actually in third position, rather than second. The Zahralddins had executed an additional deed of trust on their property securing payment of $27,000 to the Small Business Administration, which was recorded on September 28, 1973. At the time this lien was recorded, someone in the clerk's office had indexed the instrument on the wrong page of the grantor's index book, which is why it was not

---

[5] As this case had not previously been addressed by the parties on brief, the court gave the parties an opportunity following the hearing to file supplemental briefs addressing Baker. First American and NGM Insurance both did so. See Dkt. # 33, 34.

revealed in plaintiff's title examination. In September 1978, plaintiff foreclosed on the property and paid the entirety of the foreclosure sale proceeds to Heritage and the SBA in satisfaction of the two paramount liens. Plaintiff then filed suit on December 21, 1979, jointly and severally against the Clerk of the Circuit Court of Henrico County and Globe Indemnity Company, surety on an indemnity bond providing for indemnification in the event of a loss suffered by the Clerk as a result of the failure of any of its employees to faithfully perform his duties. Plaintiff claimed damages of $8,259.90, the amount it paid to SBA in satisfaction of its lien. Defendants raised a statute of limitations defense.[6] Id. at 75-76, 301 S.E.2d at 10.

The trial court held that "the cause of action arose on September 28, 1973," when the indexing error occurred, and determined that as the statute of limitations began to run as of that date, plaintiff's action was time-barred. Id. at 81, 301 S.E.2d at 13. The Virginia Supreme Court disagreed that the operative date was September 28, 1973, explaining the difference between a "cause of action" and a "right of action:"

> Many of the published cases treat "cause of action" and "right of action" as interchangeable terms, and it is little wonder the parties and the trial court confused the two. Properly defined, "[a] right of action is the right to presently enforce a cause of action—a remedial right affording redress for the infringement of a legal right belonging to some definite person; a cause of action is the operative facts which give rise to such right of action." 1 Am. Jur. 2d Actions § 2 (1962) (footnotes omitted).
>
> This is a distinction *with* a difference. While a cause of action and a right of action may accrue simultaneously, they do not necessarily do so. Indeed, two separate rights of action may arise from a single cause of action, and those rights may accrue at different times. Carter v. Hinkle, 189 Va. 1, 52 S.E.2d 135 (1949).
>
> The distinction between the cause and the right may be crucial when, as here, the statute of limitations is at issue.

---

[6] Globe also demurred, and the trial court sustained its demurrer, on grounds that the bond at issue was an indemnity bond, not a surety bond, and does not provide plaintiff a direct right of action. The Virginia Supreme Court agreed and held the trial court properly sustained Globe's demurrer. Id. at 77-78, 301 S.E.2d at 11.

Id. at 81, 301 S.E.2d at 13.  The Court continued:  "A right of action cannot accrue until there is a cause of action . . . .  In the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him."  Id. at 82, 301 S.E.2d at 14.

Applying its holding in Locke v. Johns-Manville Corp., 221 Va. 951, 275 S.E.2d 900 (1981),[7] the Virginia Supreme Court held that First Virginia Bank-Colonial's right of action accrued on May 12, 1976, when the bank recorded its deed of trust and it was reduced to the status of a third lien as a result of the indexing error three years earlier.  This, according to the Court, is when the damage to the bank occurred—not in 1973 when the initial indexing error occurred, and not in 1978 when plaintiff discovered the error, foreclosed on the property, and realized the extent of its injury.  Baker, 225 Va. at 82, 301 S.E.2d at 14.  The Court explained:

> The bank recorded its deed of trust in 1976. Its loan was made upon the mistaken premise, induced by reliance upon the accuracy of the clerk's records, that the deed of trust would constitute a second lien upon the debtor's property. As a proximate result of the indexing error, the deed of trust was reduced to the status of a third lien. At that point, and not until then, the bank suffered substantial injury to the integrity of its security, a valuable asset.

Id. at 82-83, 301 S.E.2d at 14.

---

[7] Locke was a products liability case, in which plaintiff claimed he developed mesothelioma as a result of asbestos exposure.  Defendants asserted a statute of limitations defense, arguing plaintiff's last asbestos exposure was in 1972 and suit was not filed until 1978.  The Virginia Supreme Court framed the crucial question as "[w]hen was the plaintiff hurt?" 221 Va. at 958, 275 S.E.2d at 905.  Relying on the medical evidence, the Court determined that, in this particular case, the date of injury did not coincide with the date of the wrongful act; plaintiff was injured when the disease manifested, which was demonstrably not the date of last exposure.  Id. at 959, 275 S.E.2d at 905-06.  The Court made clear that by so ruling, it was not embracing a "discovery" rule:

> We adhere to our belief, expressed in Virginia Military Institute v. King, 217 Va. at 760, 232 S.E.2d at 900, that adoption of a discovery rule, which triggers the running of the statute only when the injury is discovered or should have been discovered in the exercise of reasonable diligence, must be accomplished by the General Assembly. But, as we shall shortly demonstrate, in all of our prior decisions that reject the discovery rule, the injury or damage existed at the time of the wrongful act; it had merely not been discovered in a timely manner. Here, however, there was no injury at the time of the wrongful act. A disease like this cancer must first exist before it is capable of causing injury. To hold otherwise would result in the inequity of barring the mesothelioma plaintiff's cause of action before he sustains injury.

Id.

Similarly, in the instant case, the injury to FNB / Wells Fargo occurred no later than October 14, 2005, when the FNB Deed of Trust was recorded behind the Macquarie Credit Line Deed of Trust. FNB agreed to extend the Cooks a refinancing loan based upon the bank's mistaken belief that the Macquarie credit line would be paid in full, the Macquarie Credit Line Deed of Trust released, and the FNB Deed of Trust recorded as first priority lien. In the course of closing the loan transaction, settlement agent Star City failed to comply with its statutory duty of care and recorded the FNB Deed of Trust behind the Macquarie Credit Line Deed of Trust. At that point, FNB / Wells Fargo was injured and the five year statute of limitations began to run. First American, standing in the shoes of Wells Fargo, did not file this action against the CRESPA Bond until July 2014. As such, it is time-barred.

## IV.

Accordingly, defendants' motions to dismiss (Dkt. # 7 & 14) will be **GRANTED** and this matter will be **DISMISSED with prejudice** and **STRICKEN** from the active docket of the court.

It is **SO ORDERED**.

Entered: May 5, 2015

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge